## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

LINDSAY DYDA,

               *Plaintiff,*

v.

JOCELYN BENSON, et al.,

               *Defendants.*

_____/

Case No. 1:24-cv-11147

Thomas L. Ludington
United States District Judge

Patricia T. Morris
United States Magistrate Judge

### REPORT AND RECOMMENDATION
### TO GRANT STATE DEFENDANTS' MOTIONS FOR
### SUMMARY JUDGMENT AND TO DISMISS (ECF Nos. 31, 46)
### AND
### TO DENY PLAINTIFF'S MOTION FOR
### SUMMARY JUDGMENT (ECF No. 40)

## I.  RECOMMENDATION

For the following reasons, **IT IS RECOMMENDED** that the Court **GRANT** State Defendants' motion for summary judgment (ECF No. 46) and **DISMISS** Plaintiff's claims for declaratory and injunctive relief as **MOOT**.  **IT IS FURTHER RECOMMENDED** the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 40) as **MOOT**.  **IT IS FURTHER RECOMMENDED** the Court **GRANT** State Defendants' motion to dismiss (ECF No. 31) and dismiss the claim against Defendant Josette Tabor in her personal or individual capacity.  If adopted, the case would be dismissed in its entirety.

1

II.   **REPORT**

A.   **Background**

The Social Security Administration (SSA) has granted Plaintiff a religious exemption to the general requirement that all US citizens be issued social security numbers.   (ECF No. 27, PageID.189; ECF No. 27-2).   Due to her lack of social security number, Plaintiff has been unable to obtain a commercial driver's license (CDL) from the State of Michigan, which would allow her to operate commercial vehicles (such as semi-trucks) on the highway.   (ECF No. 27, PageID.190).   She passed or would pass all required tests, physical, and background checks—but for her lack of social security number.   (*Id.* at PageID.190–91).   Because of her lack of social security number, Defendants Jocelyn Benson, Michigan's Secretary of State, and Tabor, an employee of the Michigan Department of State, refused to process Plaintiff's application for a CDL.   (*Id.* at PageID.192).

On April 30, 2024, Plaintiff filed this lawsuit *pro se*, alleging, among other things, infringement of her First Amendment free exercise rights.   (ECF No. 1, PageID.12).   After an initial motion to dismiss, Plaintiff was given leave to amend her complaint.   (ECF No. 26).   Plaintiff, now represented by counsel, filed an amended complaint alleging infringement of her free exercise rights against State Defendants (Benson and Tabor) and violations of the Administrative Procedure Act against Federal Defendants (the Federal Motor Carrier Safety Administration

(FMCSA) and the United States Department of Transportation).  (ECF No. 27).

On September 5, 2025, Federal Defendants sent a letter to Plaintiff clarifying their position that the regulations at issue do not require an applicant to have a social security number to obtain a CDL when that applicant (1) does not have a social security number and (2) has been granted an exemption by the SSA.  (ECF No. 39-1, PageID.307).  In other words, applicants like Plaintiff.  After Federal Defendants sent the letter, State Defendants informed Plaintiff they would comply with the September 5 letter, and Plaintiff was free to "make an appointment to obtain her CLP at a Secretary of State branch office."  (ECF Nos. 46, 46-4).  Defendants have also updated their guidance and programming "to allow applicants with a religious exemption letter from the [SSA] to apply and be issued a CLP/CDL if they otherwise meet eligibility."  (ECF No. 46, PageID.373).

Three motions are pending before the Court; briefing is complete on all three. On June 11, 2025, State Defendants filed a motion to dismiss.  (ECF Nos. 31, 33, 43).  On September 16, Plaintiff filed a motion for summary judgment against State Defendants in their official capacities.  (ECF Nos. 40, 41, 50).  On October 15, State Defendants filed a motion for summary judgment, arguing the case is now moot (to the extent there are remaining claims after their motion to dismiss).  (ECF Nos. 46, 48, 52, 53).  Further facts and procedural history will be discussed below as necessary.

### B.     Discussion

#### 1.     Federal Defendants

In response to the September 5 letter, Plaintiff filed a notice voluntarily dismissing her claims against Federal Defendants.  (ECF No. 44).  Pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i), Plaintiff may dismiss an action without court order before the opposing party serves an answer or motion for summary judgment.  As Federal Defendants had not yet filed either, the notice was valid, and Defendants FMCSA and US Department of Transportation should be dismissed as defendants and terminated from the docket.

#### 2.     Summary Judgment Standard[1]

Summary judgment is appropriate where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A material fact is one that would affect "the outcome of the suit under the governing law . . . ."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court's role at summary judgment is not to weigh the evidence and determine the truth of the matter but to determine whether there are any genuine issues of fact that can only be resolved by a finder of fact.  *Id.* at 249–50, 255.   Accordingly,  the  Court  views  all  evidence  and  reasonable

---

[1] Even though State Defendants' motion to dismiss was filed before either motion for summary judgment, the motion to dismiss will be discussed last for reasons that will be explained.

inferences in favor of the nonmoving party. *Couzens v. City of Forest Park*, 114 F.4th 571, 577 (6th Cir. 2024).

However, once the moving party has met its burden to show there are no genuine issues of material fact, the burden shifts to the non-moving party to respond and cite facts or otherwise show the moving party's cited materials create a genuine issue of material fact. *Guarino v. Brookfield Tp. Trs.*, 980 F.2d 399, 405 (6th Cir. 1992); Fed. R. Civ. P. 56(c)(1). "If the non-moving party fails to discharge that burden—for example, by remaining silent—its opportunity is waived and its case wagered." *Id.* Nonetheless, the Court must still intelligently and carefully review the motion while refraining from pursuing advocacy for the silent party. *Id.* at 407.

### 3.    Cross Motions for Summary Judgment

On September 16, 2025, Plaintiff filed a motion for summary judgement seeking declaratory and injunctive relief, arguing the September 5 letter took away any federal defense State Defendants may have relied upon in this case. (ECF No. 40, PageID.321). On October 15, State Defendants filed their own motion for summary judgment, arguing the declaratory and injunctive relief Plaintiff seeks is now moot because they informed Plaintiff on September 15 (the day before Plaintiff's motion) that they would comply with the September 5 letter, and Plaintiff was free to "make an appointment to obtain her CLP at a Secretary of State branch office." (ECF Nos. 46, 46-4). Defendants have also updated their guidance and

programming "to allow applicants with a religious exemption letter from the [SSA] to apply and be issued a CLP/CDL if they otherwise meet eligibility."  (ECF No. 46, PageID.373).

Because mootness goes to subject-matter jurisdiction under Article III, "when an issue is constitutionally moot, [federal courts] don't have jurisdiction to consider it."  *In re Kramer*, 71 F.4th 428, 438 (6th Cir. 2023).  The Undersigned will thus consider this motion first because other motions may become moot "if this court lacks subject matter jurisdiction."  *Moir v. Greater Cleveland Reg'l Transit Auth.*, 895 F.2d 266, 269 (6th Cir. 1990).  "A 'case is moot when the issues presented are no longer "live" or the parties lack a legally cognizable interest in the outcome.'" *Kramer*, 71 F.4th at 438 (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). The test is whether granting the relief sought would make a difference to the legal interests of the parties.  *Id.*

It is clear the declaratory and injunctive relief Plaintiff sought would make no difference to her legal interests now that State Defendants have agreed to follow the guidance of the September 5 letter.   Plaintiff seeks a declaration that State Defendants violated the First Amendment by requiring a social security number prior to issuing a CDL when an applicant has a religious exemption from the SSA. (ECF No. 27, PageID.198).  She also seeks an injunction against the ongoing denial to issue a CDL based on her lack of social security number.  (*Id.*).  However, this

6

relief is moot now that State Defendants are prepared to issue her CDL upon completion of any other relevant requirements and have invited her to make an appointment with a Secretary of State branch office to do so. Plaintiff's arguments otherwise are unavailing.

Plaintiff repeatedly argues the case is not moot unless and until State Defendants actually issue her CDL. (*E.g.*, ECF No. 52, PageID.560). But that has never been what this case is about, nor would this Court be able to order such relief.

Plaintiff has always sought a declaration that her rights were being infringed when State Defendants refused to process her CDL application without a social security number. But such a declaration would not mean Plaintiff is entitled to the license immediately without any further requirements being met. Even taking all Plaintiff's allegations as true, she acknowledges she has not completed each step that must be completed prior to issuance of her license: "Plaintiff . . . passed *or would pass* all background checks regarding her driving record. On information and belief, Plaintiff . . . meets *or could meet* all the qualifications for a CLP/CDL . . . ." (ECF No. 27, PageID.191 (emphasis added)). Defendants further explain Plaintiff must still "complete necessary paperwork such as a self and medical certification form, and pay the applicable license fees." (ECF No. 53, PageID.596). Even the September 5 letter instructs that State Defendants "must ensure that [Plaintiff] complies with all other applicable" regulations, including entry-level driver training.

(ECF No. 46-2, PageID.404).

Plaintiff avers she had fully completed the application and is now merely waiting on issuance of her CDL.  (ECF No. 52-2, PageID.581–82).  But this does not create a genuine issue of material fact.  Whether or not Plaintiff has completed every step of the application process and complied with all other applicable regulations is not the question before this Court and does not make the issue regarding her social security number a live controversy.

Furthermore, compelling State Defendants to issue Plaintiff's license, on this record and with no further factfinding, would be "an excessively intrusive interference in the prerogatives of a state agency that is not supported by evidence of the quality and quantity required for the exercise of such extraordinary federal judicial power."  *Glover v. Johnson*, 855 F.2d 277, 285 (6th Cir. 1988).  Indeed,

> [i]t is fundamental that the federal forum, as the ultimate guardian of constitutional rights, possesses the authority to implement whatever remedy is necessary to rectify constitutionally infirm practices, policies[,] or conduct.  This broad, equitable authority, however, is tempered by precepts of comity and federalism.  As the Supreme Court has stated: "Appropriate consideration must be given to principles of federalism in determining the availability *and scope* of equitable relief."  The restraints of federalism must be applied . . . when an injunction is urged against those in charge of an executive branch of any agency of state and local government.  Thus the federal equity court in fashioning a remedy must afford relief which is no broader than necessary to remedy the constitutional violation.

*Kendrick v. Bland*, 740 F.2d 432, 437 (6th Cir. 1984) (citation modified).

Plaintiff now seeks more than an injunction prohibiting State Defendants from

8

denying her application for a failure to include a social security number; she seeks an affirmative order directing State Defendants to issue her license, no further questions asked. This extraordinary relief is not supported by the record before the Court. While Plaintiff may understandably not wish to return to a Secretary of State office, she has failed to show State Defendants are arbitrarily and unreasonably refusing to issue her CDL after receiving federal guidance via the September 5 letter.

Plaintiff argues the "voluntary cessation" exception to mootness applies to this case. "[A] defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 189 (2000) (quotation omitted). Otherwise, a defendant would be free to return to their old ways. *Id.* Thus, if a defendant has voluntarily ceased their conduct, the case only becomes moot "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Id.* (quotation omitted). The party asserting mootness carries the "heavy burden" of persuasion, though the burden is lower when the government has voluntarily ceased its conduct. *Id.*; *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019).

State Defendants contend they have met that burden here because they immediately changed State policy after receiving the September 5 letter from FMCSA containing its official position with regard to Plaintiff's situation. In

addition, State Defendants have already updated their internal programming, procedures, and policies for future applicants who are similarly situated and are actively finalizing manuals and public documents to indicate the same.

Cessation of allegedly illegal conduct by a government has been treated with more solicitude by courts than similar actions by private parties, reasoning that "such self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990) (quotation omitted). Courts assume governments acts in good faith and therefore presume the same allegedly wrongful conduct by a government is unlikely to recur. *Schlissel*, 939 F.3d at 767. However, the analysis still takes into account the totality of the circumstances in analyzing whether the ceased action could reasonably be expected to recur. *Id.* at 768. For example, a change in legislation is likely to moot a case but a mere regulatory change involving ad hoc, discretionary, and easily reversible actions requires a higher showing. *Id.*

Here, Defendants have shown the ceased action is not reasonably expected to recur. Throughout the pendency of this case, State Defendants—whether reasonably or not—understood federal regulations as requiring a social security number to issue a CDL. Within days of receiving contrary guidance from federal officials in charge of overseeing state licensing and regulations, State Defendants reversed course and contacted Plaintiff to alert her that she could now make an appointment to receive

her CDL.  State Defendants have also taken actions, and continue to take actions, to update their systems and public facing documents to ensure other similarly situated people will be able to obtain a CDL.  Although the change was regulatory and not through a legislative process, it happened quickly and does not seem likely to recur absent an official change in the law or interpretation by (now dismissed) Federal Defendants.  The September 5 letter was enough for Plaintiff to voluntarily dismiss Federal Defendants.  Similarly, State Defendants' quick about-face after receiving the letter should moot Plaintiff's equitable claims against them.

Plaintiff also objects to the admissibility of certain emails and statements made by Federal Defendants to State Defendants regarding their interpretation of the statutes at issue and whether they allow for a person without a social security number, but with a religious exemption, to obtain a CDL.  (ECF No. 52, PageID.564–65).  However, regardless of the statements' admissibility, the Undersigned did not rely on them to find the injunctive and declaratory relief moot. Ultimately, evidence of whether Federal Defendants held out that the regulations required a social security number notwithstanding a valid exemption and then subsequently changed their minds is not relevant.  Even without considering these communications, the record shows State Defendants now stand ready to process Plaintiff's application without requiring a social security number.  This is enough to moot the case.  The Undersigned need not rely on the contested evidence to

determine as such.

Similarly, Plaintiff argues State Defendants' original interpretation of the law was incorrect. (ECF No. 52, PageID.567–69). This is also immaterial to the mootness argument.

Given the above analysis, the Undersigned recommends the Court grant State Defendants' motion for summary judgment (ECF No. 46) and dismiss Plaintiff's claims for declaratory and injunctive relief. If adopted, Plaintiff's motion for summary judgment (ECF No. 40) would be moot and properly denied on this ground. However, Plaintiff is correct that her claim seeking money damages against State Defendant Tabor does not become moot even if her demands for declaratory and injunctive relief are now moot. (ECF No. 52, PageID.571). This claim will be discussed below pursuant to Defendants' motion to dismiss.

### 4.    Motion to Dismiss Standard

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the complaint regarding whether it states a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When deciding a motion under this subsection, a "court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would entitle [him or her] to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). A complaint must be

dismissed pursuant to Rule 12(b)(6) if the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Under Rule 12(b)(6), "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (citations omitted). Even though a complaint need not contain "detailed" factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (citations omitted).

The court need not accept as true legal conclusions or unwarranted factual inferences contained in the complaint. *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998). "Determining whether a complaint states a plausible claim for relief" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). For the purposes of a motion to dismiss, if two opposing inferences can plausibly be drawn from the alleged facts, the Court's obligation is to construe the complaint in the light most favorable to the plaintiff and accept his or her inference as true. *Sutton v. Metro. Gov't of Nashville and Davidson Cnty.*, 700 F.3d 865, 873 (6th Cir. 2012).

Further, although a court primarily considers the factual allegations contained

in the complaint, "'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account.'" *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)). The Sixth Circuit has specifically "held that 'documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim.'" *Weiner v. Klais & Co.*, 108 F.3d 86, 89 (6th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)); *Yeary v. Goodwill Indus.-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997).

### 5.   Motion to Dismiss

If the above recommendations are adopted, the only live claim would be Plaintiff's § 1983 claim against Defendant Tabor in her personal capacity for damages. Tabor argues Plaintiff's claim for money damages against her should be dismissed on the basis of qualified immunity.

Under the doctrine of qualified immunity, a government official can only be held liable for violating an individual's constitutional right if that right was "clearly established" at the time. *McDonald v. Flake*, 814 F.3d 804, 812 (6th Cir. 2016) (citing *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 680 (6th Cir. 2013)). "The Supreme Court has explained that the contours of the right allegedly violated must

be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 344–45 (6th Cir. 2001) (internal quotations omitted). Indeed, qualified immunity "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Chappel v. City of Cleveland*, 585 F.3d 901, 907 (6th Cir. 2009) (citation modified). Although the action need not have been previously held unlawful to be clearly established, the unlawfulness must be apparent in light of pre-existing law. *Lowden v. Cnty. of Clare*, 709 F. Supp. 2d 540, 548 (E.D. Mich. 2010). "If reasonable officials could disagree on the issue, immunity should be recognized." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999). And qualified immunity applies whether the official's mistake was one of law or of fact. *Chappel*, 585 F.3d at 907. A plaintiff bears the burden of showing defendants are not entitled to qualified immunity. *Id.*

Qualified immunity exists for Tabor here where no facts or clearly established law show she was plainly incompetent or knowingly violating the law. Although Plaintiff repeatedly alleges the law is clear regarding whether State Defendants should have issued a CDL without a social security number, the Court is not required to take Plaintiff's legal conclusions as true. *Ashcroft*, 556 U.S. at 680.

Plaintiff and Defendants' (prior) disagreement centered around their reading and interpretation of federal regulations. Those regulations state, in relevant part:

15

(a) ***Commercial Learner's Permit.*** Prior to issuing a CLP to a person, a State must:

. . .

> (5) Complete the Social Security Number verification required by paragraph (g) of this section.

. . .

(b) ***Initial CDL.*** Prior to issuing a CDL to a person, a State must:

. . .

> (7) If not previously done, complete the Social Security Number verification required by paragraph (g) of this section;

. . .

(g) ***Social Security Number verification.***

> (1) Prior to issuing a CLP or a CDL to a person the State *must verify* the name, date of birth, *and Social Security Number provided by the applicant with the information on file with the Social Security Administration*. The State is *prohibited from issuing*, renewing, upgrading, or transferring a CLP or CDL *if the Social Security Administration database does not match* the applicant-provided data.

> (2) ***Exception.*** A State is only required to perform the Social Security Number verification specified in this paragraph for initial issuance of a CLP, transfer of CDL from another State or for drivers renewing a CDL for the first time after July 8, 2011 who have not previously had their Social Security Number information verified, provided a notation is made on the driver's record confirming that the verification required by this paragraph has been made and noting the date it was done.

49 C.F.R. § 383.73 (emphasis added). Additionally,

> (e) Except in the case of a Non-domiciled CLP or CDL holder who is domiciled in a foreign jurisdiction:

> > (1) A driver applicant *must provide* his/her *Social Security Number* on the application of a CLP or CDL.

> > (2) The State *must provide* the *Social Security Number* to the CDLIS.

49 C.F.R. § 383.153 (emphasis added); *see also* 49 C.F.R. § 383.71(a)(4), (b)(4) (requiring applicant to provide the information required by § 383.153).

Prior to the September 5 letter, State Defendants argued the law was clear that applicants *must* provide a social security number to apply for a CDL. State Defendants further argued there were no exceptions or exemptions in the statutes or regulations for people in Plaintiff's position. Additionally, although other exemptions could be made, only the Secretary of Transportation—not State Defendants—had that authority. *See* 49 U.S.C. § 31315.

On the other hand, Plaintiff argued the regulations only required the information she provided to *match* the SSA's database. Therefore, if she did not have a social security number and provided that information to State Defendants, they would be able to verify with the SSA that the information matches SSA records—*i.e.*, that Plaintiff does not have a social security number due to a religious exemption.

Because this argument is now moot as discussed above, the Undersigned need not make any findings as to the appropriate interpretation of the regulations. It is enough to recognize qualified immunity merely "[i]f reasonable officials could disagree on the issue." *Key*, 179 F.3d at 1000. The Undersigned concludes this is such a case.

First, neither party cites direct legal precedent or official interpretations for

their reading of the regulations.  Instead, both parties rely on a "plain reading" of the law, neither of which is so clear on its face that the unlawfulness of State Defendants' actions would have been apparent to them.

The only authority Plaintiff cites for her position is guidance provided by FMCSA regarding applications for employment, which is promulgated under 49 C.F.R. § 391.21.  Such applications to employers must contain the applicant's social security number.  49 C.F.R. § 391.21(b)(2).  However, FMCSA has issued guidance clarifying the application need not include a social security number if the applicant has a religious objection and the SSA does not require that person to have a number.[2]  Although Plaintiff originally took the position this guidance was on all fours with the facts here, she now concedes the document merely supports her position that there should be similar flexibility with a CDL application.  (ECF No. 33, PageID.269).  "It is not enough that the rule is suggested by then-existing precedent.  The precedent must be clear enough that every reasonable official would interpret it to establish the particular rule that plaintiff seeks to apply."  *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018).  Thus, this document, while it may help Plaintiff in her plain reading analysis, does not provide such clear guidance that State Defendants must have been aware their actions were unlawful.

---

[2]  *See*  https://www.fmcsa.dot.gov/registration/commercial-drivers-license/must-drivers-application-employment-include-social-security (issued Mar. 30, 2004).

Even Plaintiff's complaint understands reasonable minds could differ on the interpretation of the above regulations: "*Read carefully*, Section 383.73(g) *seemingly* does not require a person to *have* a social security number . . . ." (ECF No. 27, PageID.192 (first and second emphasis added)). Throughout Plaintiff's briefing, she continues to recognize her plain language analysis requires a careful and close reading of the applicable regulations. (*See* ECF No. 33, PageID.274, 277 ("Parsed correctly and carefully"); ECF No. 40, PageID.315 ("careful reading"); ECF No. 52, PageID.561 (same)).

Whether or not the Court would agree with Plaintiff's "careful" reading of the regulations, Defendant Tabor is clearly entitled to qualified immunity. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011). At least two reasonable interpretations exist under the applicable federal regulations. First, a person applying for a CDL must supply a valid social security number unless the Secretary of Transportation grants an exemption or another exemption applies. Second, a person could supply proof they do not have a social security number and have a valid exemption from the SSA, and a state official can verify the information is correct. Because Defendant Tabor was neither plainly incompetent nor knowingly violated the law, she is entitled to qualified immunity and Plaintiff's First Amendment claim against her in her personal capacity should

be dismissed.

### E.   Conclusion

For these reasons, **IT IS RECOMMENDED** that the Court **GRANT** State Defendants' motion for summary judgment (ECF No. 46) and **DISMISS** Plaintiff's claims for declaratory and injunctive relief **AS MOOT**.   **IT IS FURTHER RECOMMENDED** the Court **DENY** Plaintiff's motion for summary judgment (ECF No. 40) **AS MOOT**.   **IT IS FURTHER RECOMMENDED** the Court **GRANT** State Defendants' motion to dismiss (ECF No. 31) and dismiss the claim against Defendant Tabor in her personal capacity.  If adopted, the case would be dismissed in its entirety.

## III.   <u>REVIEW</u>

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  A party may respond to another party's objections within 14 days after being served with a copy."  Fed. R. Civ. P. 72(b)(2); *see also* 28 U.S.C. § 636(b)(1).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  The parties are advised that making some objections, but failing to raise

others, will not preserve all the objections a party may have to this R&R. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Dakroub v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this R&R to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  December 8, 2025                    s/PATRICIA T. MORRIS
                                            Patricia T. Morris
                                            United States Magistrate Judge