UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LINDSAY DYDA,

Plaintiff,

v.

JOCELYN BENSON and
JOSETTE TABOR, in her official
and personal capacities,

Defendants.
_____________________________________/

Case No. 1:24-cv-11147

Honorable Thomas L. Ludington
United States District Judge

Honorable Patricia T. Morris
United States Magistrate Judge

**OPINION AND ORDER (1) ADOPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, (2) OVERRULING PLAINTIFF'S OBJECTIONS, (3) GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, (4) GRANTING DEFENDANTS' MOTION TO DISMISS, (5) DENYING PLAINTIFF'S PARTIAL MOTION FOR SUMMARY JUDGMENT AS MOOT, AND (6) DISMISSING PLAINTIFF'S AMENDED COMPLAINT**

On December 8, 2025, Magistrate Judge Patricia T. Morris issued a report (R&R) recommending that this Court (1) grant Defendants' Motion for Summary Judgment, ECF No. 46, and dismiss Plaintiff's official capacity claims for declaratory and injunctive relief as moot, (2) deny Plaintiff's Motion for Summary Judgment, ECF No. 40, as moot, and (3) grant State Defendants' motion to dismiss, ECF No. 31, and dismiss the claim against Defendant Josette Tabor in her individual capacity. For the reasons explained below, Judge Morris's R&R will be adopted, and Plaintiff's Objections will be overruled.

**I.**

Because of her religious beliefs, Plaintiff Lindsay Dyda has no Social Security number. ECF No. 1 at PageID.19. So in March 2024, when Plaintiff visited a Michigan Department of State Office to obtain her Commercial Driver's License (CDL) and was asked to provide her social

security number, she provided a religious-exemption letter from the federal Social Security Administration. *Id.* Yet the Department of State Office "refused to accept her religious [-] exemption letter and in turn refused to issue her a [CDL]." ECF No. 6 at PageID.25 (citing ECF No. 1 at PageID.12).

Plaintiff then researched the issue and discovered a regulation in the Code of Federal Regulations that she believed applied to her circumstances. ECF No. 1 at PageID.12. The relevant regulation concerns applications for employment to drive a commercial motor vehicle. 49 C.F.R. § 391.21. This regulation provides that "a person shall not drive a commercial motor vehicle unless he/she has completed and furnished the motor carrier that employs him/her with an application for employment that meets the requirements of paragraph (b) of this section." 49 C.F.R. § 391.21(a). Paragraph (b) enumerates twelve requirements, the second of which is that an application must contain "[t]he applicant's name, address, date of birth, and *social security number*." 49 C.F.R. § 391.21(b)(2) (emphasis added). But the Federal Motor Carrier Safety Administration (FMCSA) has issued guidance for employers on how this requirement applies to applicants with religious objections to Social Security numbers. *See* FMCSA, *Guidance Q&A § 391.21 Application for E mployment*, https://tinyurl.com/FMCSASec391 (last visited Apr. 28, 2025). The guidance provides that such individuals are not required to provide a Social Security number on their employment applications. *See id.*

According to Plaintiff, after reviewing this guidance, Plaintiff sent it to Josette Tabor, whom she alleges is the "Lead Worker at the CDL Help Desk for the Michigan Department of State." ECF No. 1 at PageID.12; *see also* ECF No. 18-1 at PageID.103. Tabor allegedly responded that "this information does not apply to this situation." *Id.*

One month later, Plaintiff filed a *pro se* Complaint alleging that the Defendants FMCSA, the U.S. Department of Transportation (DOT), the Michigan Department of State, and the Michigan Department of Motor Vehicles (DMV) violated her First Amendment right to freedom of religion and her Fifth Amendment rights. ECF No. 1 at PageID.10. She also alleged that Defendants violated Title VII of the Civil Rights Act of 1964 and 18 U.S.C. §§ 242, 245. *Id.*

On May 1, 2024, the case was referred to Magistrate Judge Patricia T. Morris. ECF No. 4. Because Plaintiff was proceeding *in forma pauperis*, Judge Morris reviewed the Complaint for immunity, frivolity, and failure to state a claim. *See* 28 U.S.C. § 1915(e)(2)(B); *see also* ECF No. 6. Judge Morris issued a report (R&R) recommending that Plaintiff's claims brought under Title VII, the Fifth Amendment, and 18 U.S.C. §§ 242, 245 be dismissed, and that Defendants FMCSA and U.S. DOT also be dismissed. *See id.* On July 16, 2024, this Court adopted Judge Morris's R&R, leaving only Plaintiff's First Amendment claims against the Department of State and the DMV. *See* ECF No. 8.

On September 23, 2024, the Michigan Department of State and DMV moved to dismiss Plaintiff's Complaint. ECF No. 14. They argued that they were entitled to Eleventh Amendment sovereign immunity, Plaintiff lacked standing to sue them because they merely enforced federal regulations requiring them to complete Social Security number verifications, and Plaintiff failed to state a First Amendment claim in the first instance. *See id.* at PageID.83–91.

Shortly after, Plaintiff retained counsel and moved for leave to amend her Complaint. ECF Nos. 17; 18. The proposed amendment sought to: (1) remove Plaintiff's claims against the Department of State and DMV; (2) reinstate the FMCSA and DOT as defendants; (3) add Michigan Secretary of State Jocelyn Benson in her official capacity under *Ex Parte Young*, 209 U.S. 123 (1908); and (4) add Michigan Department of State employee Josette Tabor, in both her official and

individual capacities. *See* ECF Nos. 18; 18-1 at PageID.103. The amended complaint would assert an Administrative Procedure Act claim against the FMCSA and DOT, and a First Amendment claim under 42 U.S.C. § 1983 against Benson and Tabor. *See* ECF No. 18-1 at PageID.109–10.

On April 8, 2024, Judge Morris issued another R&R that, among other things, recommended that this Court grant Plaintiff's Motion for Leave to Amend her Complaint. *See* ECF No. 25. The R&R was adopted, and Plaintiff was thus granted leave to amend her complaint. ECF No. 26.

Plaintiff then filed her First Amended Complaint on May 6, 2025. ECF No. 27. The Amended Complaint asserts (1) a First Amendment claim under 42 U.S.C. § 1983 against Defendant Benson in her official capacity and Defendant Tabor in both her individual and official capacity, and (2) an Administrative Procedure Act claim against Defendants FMSCA and USDOT. *Id.* Plaintiff seeks declaratory and injunctive relief, along with damages for the individual capacity claims. *Id.*

Defendants Benson and Tabor moved to dismiss the Amended Complaint on June 11, 2025. ECF No. 31. On September 5, 2025, the federal government sent a letter to Defendant Benson clarifying that under federal law, Plaintiff did not need a Social Security number to obtain a CDL due to her exemption. ECF No. 39-1. Defendants then revised their policy and informed Plaintiff that they would comply with the September 5 letter, and Plaintiff was free to "make an appointment to obtain her [CDL] at a Secretary of State branch office." ECF No. 46-4 at PageID.445.

On September 16, 2025, Plaintiff filed a Partial Motion for Summary Judgment as to liability. ECF Nos. 40; 41. On September 29, 2025, Plaintiff dismissed all claims against Defendants FMSCA and USDOT, leaving only Defendant Benson in her official capacity and

Defendant Tabor in her individual and official capacity. ECF No. 44. On October 15, 2025, Defendants moved for summary judgment, contending that the official capacity claims against them were moot. ECF No. 46.

Judge Morris issued an R&R on December 8, 2025, recommending that this Court grant the Defendants' Motion for Summary Judgment and Motion to Dismiss and deny Plaintiff's Motion for Summary Judgment. ECF No. 54. Judge Morris concluded that the official capacity claims against Defendants are moot, given that Defendants revised their policy in response to the September 5 letter. *Id.* at PageID.604–11. As for Plaintiff's individual-capacity claim against Defendant Tabor, Judge Morris concluded that Defendant Tabor was entitled to qualified immunity. *Id.* at PageID.613–18. As a result, Judge Morris recommended that this Court dismiss the case. *Id.* at PageID.619. Plaintiff objected. ECF No. 55.

**II.**

A party may object to and seek review of an R&R. *See* FED. R. CIV. P. 72(b)(2). If a party properly objects, then "[t]he district judge must determine de novo" the part of the R&R to which the objection pertains. FED. R. CIV. P. 72(b)(3). A party must object timely and with specificity—failure to do so waives any right of appeal. *Thomas v. Arn*, 474 U.S. 140, 151, 155 (1985) (citation omitted); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). Likewise, parties may not "raise at the district court stage new arguments or issues that were not presented" before the magistrate judge issues the R&R. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000).

When reviewing an R&R *de novo*, this Court must review at least the evidence the parties presented to the magistrate judge. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981).

After reviewing the evidence, the court can accept, reject, or modify the R&R. FED. R. CIV. P. 72(b)(3).

**III.**

Plaintiff lodges five objections to Judge Morris's R&R. ECF No. 55. The Court has reviewed Plaintiff's Complaint, ECF No. 1; Plaintiff's Amended Complaint, ECF No. 27; Defendants' Motion to Dismiss, ECF No. 31; Plaintiff's Motion for Summary Judgment and Exhibits, ECF Nos. 40 and 41; State Defendants' Motion for Summary Judgment, ECF No. 46; Plaintiff's Objections to the R&R, ECF No. 55, and Defendants' Response, ECF No. 56; and the R&R itself, ECF No. 54. Having conducted a *de novo* review, this Court will address each of Plaintiff's objections below.

**A. Objections 1 through 3 and part of 5.**

This Court will address objections one through three and the portions of five that touch on Defendants' liability in their official capacity. Each challenges the R&R's conclusion that Plaintiff's official-capacity claims are moot, given Defendants' post-suit change in policy after receiving a letter from the federal government advising that their interpretation of the CDL guidelines concerning Social Security numbers was mistaken. *See* ECF No. 54. Plaintiff asserts the following objections to the R&Rs analysis on the official capacity claims:

1. The R&R erred in finding the claims moot and in declining to reach the merits of Plaintiff's Motion for Summary Judgment, allegedly misapplying Article III principles.
2. The R&R incorrectly concluded that the voluntary cessation exception to mootness does not apply here.
3. The R&R's recommendation concerning qualified immunity is derivative of its mootness error.

ECF 55 at PageID.623. None of these objections is persuasive.

For "a federal court to have jurisdiction under Article III, an ongoing controversy must exist." *Diaz v. Kinkela*, 253 F.3d 241, 244 (6th Cir. 2001) (citation modified). And "it is not enough that a controversy existed at the time the complaint was filed"—it must exist throughout the entire litigation. *Id.* In this way, a federal court's jurisdiction ends when a case becomes moot. *Speech First, Inc. v. Schlissel*, 939 F.3d 756, 767 (6th Cir. 2019).

Typically, a case becomes moot in one of three circumstances: when (1) "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome"; (2) when subsequent events make it "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur"; or (3) later developments render it impossible for the court to grant the prevailing party effective relief—because "the thing sought to be prohibited has been done, and cannot be undone by any order of court." *Fehribach v City of Troy*, 412 F.Supp.2d 639, 641–42 (E.D. Mich. 2006) (citing *Parsons Inc. Co. v. Chase Manhattan Bank*, 466 F.2d 869, 871 (6th Cir. 1972)). Despite needing only one of the factors for mootness, Defendants meet the legal standard for all.

**1. The issue is no longer "live."**

At the outset, Plaintiff framed her claim narrowly. She alleged that Defendants are "refus[ing] to process Plaintiff's . . . *request and application* for a CLP/CDL." ECF No. 27 at PageID.192 (emphasis added). When, as here, a plaintiff argues a "continuing wrong," a live controversy exists only if the court can provide meaningful relief. *Diaz*, 253 F.3d at 243. As the R&R found, this Court cannot.

Plaintiff contends that "making the possession of an SSN — a number Plaintiff . . . is religiously barred from obtaining and has secured a religious exemption from . . . a prerequisite to her chosen career," would violate Plaintiff's constitutional rights under the Free Exercise clause.

ECF No. 55 at PageID.639. But Plaintiff also concedes that the Secretary of State has informed her that she may come into a branch office to apply for her CDL, which it will now process. ECF No. 51-2 at PageID.551. That acknowledgement, coupled with the Defendants' formal policy change—reflected in updated internal programming, procedures, and policies, as well as manuals currently being finalized—makes clear that a Social Security number is not required when an applicant has a religious exemption. On this record, if Plaintiff were to submit an application and satisfy the remaining requirements she has not yet completed, her lack of a Social Security number would not stand in her way.

Therefore, there is nothing left for this Court to order. The agency has already done what Plaintiff seeks to compel: the ability for her application to proceed without a Social Security number. This fact renders the controversy against Defendants in their official capacity moot. *See Ohio v. EPA*, 969 F.3d 306, 308 (6th Cir. 2020).

Further, this Court could not order the relief Plaintiff appears to contend is still possible—ordering Defendants to *grant* her CDL application—especially before Plaintiff meets all qualifications. At most, the Court could declare unconstitutional the Secretary of State's prior refusal to process Plaintiff's application based on her religious exemption. But even that relief would carry Plaintiff no further than where she already stands. In effect, then, this Court would provide nothing but an impermissible advisory opinion. *See Safety Specialty Ins. Co. v. Genesee Cnty. Bd. of Comm'rs*, 53 F.4th 1014, 1020 (6th Cir. 2022).

Digging deeper into Plaintiff's allegations reflects why this Court lacks authority to compel Defendants to grant Plaintiff's application at this juncture. In her Amended Complaint, Plaintiff alleges that she "passed or *would pass* all background checks" and "meets or *could meet*" all qualifications. ECF No. 27 at PageID.191 (emphasis added). As the R&R correctly states,

"compelling State Defendants to issue Plaintiff's license" without her clearly meeting all requirements "would be an 'excessively intrusive interference in the prerogatives of a state agency that is not supported by evidence of the quality and quantity required for the exercise of such extraordinary federal judicial power.'" ECF No. 54 at PageID.607 (quoting *Glover v. Johnson*, 855 F.2d 277, 285 (6th Cir. 1988)).

And the record bolsters this point. Although Plaintiff maintains that her lack of a Social Security number is the "sole reason" she has not obtained a license, ECF No. 55 at PageID.638, Defendants respond that she must still complete required paperwork—including self-certification and medical forms—and pay the applicable fees. ECF No. 53 at PageID.596; *see also* ECF No. 27 at PageID.191. Forcing a state agency to administer a license before all proper actions for an application have taken place would be precisely the sort of intrusive judicial management *Glover* cautions against.

**2. The wrongful behavior is not reasonably likely to occur, meaning voluntary cessation does not overcome mootness.**

Plaintiff's third objection highlights the high bar that voluntary cessation requires and states the R&R simply "collapses the doctrine into a presumption of governmental good faith." ECF No. 55 at PageID.649. That criticism overlooks a settled distinction in the case law. But the objection ignores the fact "that 'cessation of the allegedly illegal conduct by government officials has been treated with more solicitude by the courts than similar action by private parties' and that [the government's] self-correction provides a secure foundation for a dismissal based on mootness so long as it appears genuine." *Mosley v. Hairston*, 920 F.2d 409, 415 (6th Cir. 1990); *see also Speech First, Inc.*, 939 F.3d at 767. And when a government alters a policy post-litigation, the mere "theoretical possibility of reversion to an allegedly unconstitutional policy is simply not

sufficient to warrant an exception to mootness." *Gun Owners of Am., Inc. v. DOJ*, 157 F.4th 834, 838 (6th Cir. 2025). Here, Defendants' policy course correction appears genuine, and there is no reasonable expectation that the alleged violation will recur.

To begin, the claim arose out of the Secretary of State's policy regarding its interpretation of a federal regulation, 49 C.F.R. § 383.73(a)(5). Plaintiff admits that in September 2025, the federal government provided a letter stating that the State's interpretation that led to this litigation was "contrary to federal law." ECF No. 55 at PageID.637. The catalyst for the change, in other words, was not the pendency of this lawsuit but guidance from the federal government. *See Gun Owners*, 157 F.4th at 838–39 (holding that the voluntary cessation exception to mootness did not apply when the catalyst for a policy change was guidance from a new administration after general policy review).

That point matters. The touchstone of the voluntary cessation doctrine is whether the government has changed its policy in good faith or to simply cease litigation. *Resurrection School v. Hertel*, 35 F.4th 524, 529 (6th Cir. 2022) (en banc). The Sixth Circuit has noted that when outside reasons beyond litigation can be linked to the voluntary cessation of a policy, that may also be seen as favorable to the government. *Id. Hertel* illustrates the principle. There, the court held that dramatically changed external circumstances—vaccines, improved therapeutics, and declining case counts—rendered a challenge to a COVID-19 mask mandate that was repealed during the litigation moot, and the proper question became whether the State would likely reimpose the mandate. *Id.* at 528–29. The same question governs here.

Both sides cite the September 5, 2025, letter from the federal government as the basis for the policy change. Plaintiff characterizes the letter as stating that the prior policy "is contrary to federal law." ECF No. 55 at PageID.637. The relevant inquiry, then, is whether Defendants will

likely reimpose the social-security-number requirement. *Hertel*, 35 F.4th at 529. The answer is no. The shift flowed from changed circumstances—the receipt of federal guidance—not from the pressures of litigation. Again, Plaintiff herself acknowledges as much. ECF No. 54 at PageID.610. In these circumstances, there is no reason to think the agency would feel free to "return to [their] old ways." *United States v. WT Grant Co.,* 345 U.S. 629, 632 (1953).

The R&R further notes that Defendants have already updated their internal programming, procedures, and policies for future applicants and are finalizing manuals and public-facing documents. *Id.* at PageID.609. Those steps reinforce the conclusion that the change was substantive and durable, not a litigation tactic. Plaintiff's assertion that Defendants merely altered course mid-case, therefore, misses the mark. ECF No. 55 at PageID.652.

The timing of the change only confirms that conclusion. The Sixth Circuit has considered the lapse of time between the filing of suit and a policy change as evidence of good faith. *Hertel*, 35 F.4th at 529. In *Hertel*, eight months sufficed, even though the policy evolved during the litigation. *See id*. Here, approximately sixteen months passed between the filing of the initial complaint and the policy change—and the change followed directly from the September 5 federal letter. *See* ECF No. 1 at PageID.7; ECF No. 55 at PageID.637. As the R&R observes, this letter was enough for Plaintiff to remove the federal actors from the suit, underscoring its significance. ECF No. 54 at PageID.610.

Taken together, the record shows genuine governmental self-correction and "no basis for thinking" Defendants "will snap back to the old" policy. *Gun Owners*, 157 F.4th at 839. Thus, voluntary cessation cannot overcome mootness here.[1]

**3. Declaratory relief does not meet the *Grand Truck* Factors.**

Again, the only declaratory relief this Court could conceivably provide would be a declaration that Plaintiff's lack of a Social Security number cannot, by itself, preclude further processing of her application—a proposition already acknowledged by both Defendants and the federal government. Plaintiff nevertheless insists that this Court should announce that Defendants must provide and *issue* her CDL. ECF No. 55 at PageID.642. (emphasis added). This Court lacks the authority to do so. It cannot compel Defendants to issue the CDL without Plaintiff completing the full application process, particularly where Defendants have already represented that she may apply without a Social Security number.

[1] Despite the jurisdictional disposition of this case, this Court does not overlook the practical consequence that follows. Plaintiff has, in effect, obtained the relief she sought—the ability to pursue a CDL without a Social Security number—but she must nonetheless shoulder the costs of this litigation. Under the Supreme Court's rejection of the catalyst theory in *Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598 (2001), Plaintiff is not a "prevailing party" for 42 U.S.C. § 1988's fee-shifting framework.

That reality may strike some as troubling. It invites the concern that a State, invoking the mantle of federal compliance, could enforce an unlawful policy until challenged, then seek federal clarification, reverse course, and thereby moot the case—leaving the plaintiff without any prospect of recovering attorneys' fees. In such circumstances, the private attorneys general envisioned by § 1983 may have succeeded in correcting unlawful conduct yet find themselves denied the very incentive Congress provided to encourage private enforcement. *See Buckhannon*, 532 U.S. at 635–36 (Ginsburg, J., dissenting).

To be sure, the voluntary-cessation doctrine tempers this risk by requiring that a defendant's change in position be "genuine." But the doctrine is not a panacea. A sufficiently careful State, attentive to the contours of the case law, could engineer the appearance of genuineness, avoid a fee award, and in the process recalibrate the incentives Congress anticipated in § 1988.

Even so, Plaintiff claims declaratory relief is required due to the factors laid out in *Grand Truck W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323 (6th Cir. 1984). But these do not land in Plaintiff's favor.

The first factor asks whether this action would settle the controversy. *Id.* at 326. It would not settle the controversy because there is no controversy. The official capacity claims are moot. As Defendants have indicated, Plaintiff is free to enter any Secretary of State office and go through the application process without a Social Security number, thus removing the very barrier that prompted this litigation. ECF Nos. 1; 27. A declaratory judgment would do nothing more than restate what both sides now agree is the governing rule.

This is also the precise reason why factor two—which asks "whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue," *Grand Truck*, 746 F.2d at 326—does not favor Plaintiff. *See United Specialty Ins. Co., v. Cole's Place Inc.,* 936 F.3d 386, 397 (6th Cir. 2019) (stating that "these two factors often overlap substantially"). The legal issue requires no further clarification. The Parties agree that Plaintiff may proceed with an application without a Social Security number. But that agreement only carries her so far. Whether or not she has a Social Security number, Plaintiff must still meet all the prerequisites for the license. It is not enough that she "could meet" them.

The third issue concerns procedural fencing—it does little work here. *Grand Truck*, 746 F.2d at 326. The Sixth Circuit has cautioned that this consideration generally does "not weigh heavily in this analysis," and often proves neutral when declaratory relief is sought after litigation has already begun. *United Specialty Ins. Co.*, 936 F.3d at 399. This case is no exception. Therefore, this factor neither supports nor undermines Plaintiff's request.

The fourth factor considers whether declaratory relief would create friction between the federal and state courts' issuance of relief or improperly intrude on state authority. *Grand Truck*, 746 F.2d at 326. Plaintiff claims that "the risk of friction arises only if this Court declines to act." ECF No. 55 at PageID.643. But Defendants and the federal government are now adhering to the same policy. Plaintiff correctly claims that there is no state controversy currently, *id.,* which, on its own, might slightly favor her. *Cole's Place Ins*., 936 F.3d 386 at 399–400. Yet because there is no live controversy at issue for Plaintiff's official capacity claims, a federal declaration effectively directing Defendants to bypass ordinary licensing procedures would invite precisely the kind of federal–state friction this factor counsels against.

The final factor asks whether an alternative remedy would be more effective. *Grand Truck*, 746 F.2d at 326. Again, Plaintiff is correct that injunction and declaratory relief may serve separate legal purposes. ECF No. 55 at PageID.643. But mootness forecloses both. When it is "impossible . . . to grant any effectual relief whatever, to [a] prevailing party," the claim must be dismissed. *Knox v. Serv. Emp. Intern. Union, Local 1000*, 567 U.S. 298, 307 (2012).

In sum, all *Grand Trunk* factors either favor Defendants or remain neutral. Declaratory relief is therefore inappropriate as a matter of law. To the extent Plaintiff maintains that she cannot process her application, Defendants have invited her to do exactly that. And to the extent she seeks an order directing the immediate issuance of a CDL without further review, that request goes well beyond this Court's role and would create the very federal–state friction the doctrine is designed to avoid—particularly where Plaintiff has not yet satisfied all state requirements. ECF No. 27 at PageID.191 (stating Plaintiff "passed or *would* pass" all requirements).

**B. Objections 1, 4, and part of 5.**

This Court now addresses Objections one, four, and the portions of five that bear on Defendant Tabor's liability in her individual capacity. Each challenges the R&R's conclusion that Defendant Tabor is shielded from liability in her individual capacity. ECF No. 55 at PageID.623. As to those claims, Plaintiff contends that the R&R erred by failing to reach the merits, by concluding that Defendants' interpretation of the regulation was reasonable, and by holding that qualified immunity protects Defendant Tabor from liability. *Id.* These objections miss the mark.

If the court adopts the R&R, then it may simply "state that it engaged in a de novo review of the record and adopts the report and recommendation" without "stat[ing] with specificity what it reviewed." *United States v. Robinson*, 366 F. Supp. 2d 498, 505 (E.D. Mich. 2005) (citing *Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002); 12 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 3070.2 (2d ed. 1997)), *aff'd*, 290 F. App'x 769 (6th Cir. 2008); *Fharmacy Recs. v. Nassar*, 465 F. App'x 448, 456 (6th Cir. 2012) ("[T]he district court's statement that it conducted de novo review is deemed sufficient"). This Court has reviewed *de novo* Plaintiff's Complaint, ECF No. 1; Plaintiff's Amended Complaint ECF No. 27; Defendants' Motion to Dismiss, ECF No. 31; Plaintiff's Motion for Summary Judgment and Exhibits, ECF 40 and 41; State Defendants' Motion for Summary Judgment, ECF No. 46; Plaintiff's Objections to the R&R, ECF No. 55, and Defendants' Response, ECF No. 56; and the R&R itself, ECF No. 54.

Where applicable, qualified immunity protects government officials from civil liability. *Vanderhoef v. Dixon*, 938 F.3d 271, 276 (6th Cir. 2019). It applies to Plaintiff's § 1983 claim against Defendant Tabor unless her conduct violated Plaintiff's clearly established constitutional rights. *Ortega v. U.S. Immigr. & Customs Enf't*, 737 F.3d 435, 438 (6th Cir. 2013). The test asks whether (1) the defendant violated the plaintiff's constitutional rights and (2) that right was clearly

established at the time of the incident giving rise to the claim. *Id.* This Court may address the two prongs in either order, and if the answer to either is "no," then Defendant Tabor is entitled to qualified immunity. *Finley v. Huss*, 102 F.4th 789, 804 (6th Cir. 2024).

A right is clearly established only if it is "sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (cleaned up). The burden rests with the plaintiff to make that showing. *Bell v. City of Southfield,* 37 F.4th 362, 367 (6th Cir. 2022). In this context, it means that a plaintiff must provide an "on point" Sixth Circuit or Supreme Court case that shows "a reasonable [state actor] would have known their actions were unconstitutional under the *specific* circumstances they encountered." *Id.* at 367-68 (emphasis added).

Having conducted this *de novo* review concerning the individual capacity claim against Defendant Tabor, this Court concludes that Judge Morris's factual conclusions are correct. Further, Judge Morris's legal conclusions are correct to the extent that Plaintiff has not provided a sufficiently on-point case to clearly establish the asserted legal violation. Thus, Defendant Tabor is entitled to qualified immunity on Plaintiff's individual capacity claim against her.

***

In sum, none of Plaintiff's Objections is persuasive. Thus, her Objections, ECF No. 55, will be overruled, and the R&R, ECF No. 54, will be adopted. As a result, Defendants' Motion for Summary Judgment, ECF No. 50, will be granted, and Plaintiff's official-capacity claims will be dismissed as moot. Moreover, Defendants' Motion to Dismiss, ECF No. 31, will be granted, and Plaintiff's individual-capacity claim against Defendant Tabor will be dismissed on qualified immunity grounds. Further, Plaintiff's Motion for Partial Summary Judgment, ECF No. 46, will

be denied as moot. Accordingly, Plaintiff's First Amended Complaint, ECF No. 31, will be dismissed.

**IV.**

Accordingly, it is **ORDERED** that Plaintiff's Objections, ECF No. 55, are **OVERRULED.**

Further, it is **ORDERED** that Magistrate Judge Patricia T. Morris's Report and Recommendation, ECF No. 54, is **GRANTED.**

Further, it is **ORDERED** that Defendants' Motion for Summary Judgment, ECF No. 40, is **GRANTED.**

Further, it is **ORDERED** that Plaintiff's official-capacity claims against Defendants are **DISMISSED AS MOOT**.

Further, it is **ORDERED** that Defendants' Motion to Dismiss, ECF No. 31, is **GRANTED.**

Further, it is **ORDERED** that Plaintiff's individual-capacity claim against Defendant Tabor is **DISMISSED WITH PREJUDICE.**

Further, it is **ORDERED** that Plaintiff's First Amended Complaint, ECF No. 27, is **DISMISSED**.

Further, it is **ORDERED** that Plaintiff's Motion for Partial Summary Judgment, ECF No. 46, is **DENIED AS MOOT**.

**This is a final order and closes this case.**

Dated: February 19, 2026

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge